UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>JAIME MICOLTA HURTADO, )<br>JUAN CARLOS GOMEZ, )<br>)<br>Defendants. ) | Criminal No. 05-316 (ESH) |

GOVERNMENT'S MOTION *IN LIMINE* REGARDING
DISCLOSURE OF AGENTS' REPORTS

**COMES NOW** the United States of America, by and through the undersigned attorneys, and hereby files the instant Motion In Limine to preclude from discovery the written reports of DEA Agents who are scheduled to testify in the instant case. In support of this motion, the United States hereby states as follows:

**I. Introduction**

On Monday June 9, 2008, a status hearing was conducted in the instant case, during which counsel for the defendants renewed their previous requests for the government to produce reports of DEA agents (*i.e.*, "DEA-6s") who participated in the investigation of the instant case. The government objected and argued that the DEA-6s were not Jencks material within the meaning of Rule 26.2 of the Federal Rules of Criminal Procedure. Notwithstanding, the Court ordered the government to produce the DEA-6s and rough notes of the testifying agents, to the extent that such reports related to the subject matter about which the agents would testify. The Court stated, however, that should the government oppose the disclosure of the DEA-6s that met this criteria, it could submit a memorandum of law stating its reasons.

The government has finalized its witness list with respect to those DEA agents who will testify at trial. With respect to those testifying DEA agents, the Government has determined the subject matter of their testimony and compared such testimony with the DEA-6s that the agents generated.[1] The government has uncovered two DEA-6s produced by an agent who will testify in this case – a DEA-6 prepared by Special Agent Adam Collier regarding the arrest of Jaime Micolta-Hurtado, and a DEA-6 prepared by Special Agent Arthur Ventura summarizing an interview with a confidential informant, who will not testify in this case. On June 12, 2008, the Government turned over the DEA-6 prepared by Adam Collier to defense counsel. With respect to the one remaining DEA-6 report, the government anticipates that Special Agent Ventura will be qualified as an expert in the case and, among other things, will testify generally about drug routes and operations in Central and South America, including Panama (where Ventura was stationed as a DEA special agent for a number of years), and will discuss Panama as a trans-shipment point for the smuggling of cocaine from Colombia to the United States. Ventura will not be called as a fact witness in this case. Accordingly, under governing case law, the DEA-6, a summary of an interview with an informant who will not testify in this case, is not a "statement" within the meaning of the Jencks Act. Moreover, the report is not discoverable in this case because its subject matter does not relate to the subject matter of Agent Ventura's anticipated testimony, as the Jencks Act and relevant case law require.

---

[1] The Government is not required to produce the DEA-6s of DEA agents who will not testify at trial. See United States v. Tarantino, 846 F.2d 1384, 1417 (D.C. Cir. 1988) ("[J]ust as the Jencks Act does not provide for the discovery of statements by government witnesses prior to their actual testimony, it also does not require production of statements by potential witnesses who in fact do not ultimately testify.").

## II. Analysis

The Jencks Act (hereinafter also referred to as "the Act"), codified at 18 U.S.C. §3500 et seq., provides that, after a witness called by the government has testified on direct examination, the defendant may discover that witness's pretrial statements, if the statements are in the government's possession and relate to the subject matter of the witness's testimony. See 18 U.S.C. §3500(b); see also Fed. R. Crim. P. 26.2.[2]

1.      The DEA-Report is Not a Statement Within the Meaning of the Jencks Act.

A "statement" under the Jencks Act is defined as follows: (1) written statements that are signed or otherwise adopted or approved by the witness; (2) substantially verbatim recordings or transcriptions of oral statements; and (3) grand jury testimony. 18 U.S.C. §3500(e).

In the instant case, the DEA-6 report described above is not discoverable by the defendants because it is not a "statement" within the meaning of the Act. The report in question here is neither a statement that was signed or otherwise adopted by the witness, nor grand jury testimony, thus, the first and third definitions above are inapplicable. Nor is the statement a "substantially verbatim recording or transcription" of an oral statement. Indeed, in this case, DEA agents, including Special Agent Ventura, interviewed a number of potential witnesses as part of their investigation. At times during these interviews, the agents undoubtedly made notes of things they deemed significant and often included their own interpolations. They did not record these interviews – they are not stenographers. The DEA-6 report here is no exception. The report, therefore, is not substantially verbatim. See Palermo v. United States, 360 U.S. 343, 352-53 (1959) (holding that Jencks Act covered "only those statements which could properly be

---

[2] Rule 26.2 incorporates the Jencks Act into the Federal Rules of Criminal Procedure.

called the witness's own words"); United States v. Donato, 99 F.3d 426, 433 (D.C. Cir. 1997) (denying defendant's claim that under the Jencks Act the government was required to produce notes and reports regarding an interview of a cooperating witness that were prepared by a government agent; notes only included agent's "selection" of pertinent information and could not properly be called witness's "own words").

Shortly after the passage of the Jencks Act, the Supreme Court defined the parameters of a "statement" for purposes of the Act. Palermo, 360 U.S. 343. "One of the most important motive forces behind the enactment of [the Jencks Act] was the fear that an expansive reading of the [Jencks Case] would compel the undiscriminating production of agent's summaries of interviews regardless of their character or completeness." Id. at 350. Accordingly, Congress limited production to documents that are truly the witness's statement, as opposed to someone else's summary or interpretation of what the witness said:

> [I]t was felt to be grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations, and interpolations. . . . It is clear that Congress was concerned that only those statements which could properly be called the witness' own words should be made available to the defense for purposes of impeachment. It was important that the statement could fairly be deemed to reflect fully and without distortion what had been said to the government agent. Distortion can be a product of selectivity as well as the conscious or inadvertent infusion of the recorder's opinions or impressions. It is clear from the continuous congressional emphasis on "substantially verbatim recital," and "continuous, narrative statements made by the witness recorded verbatim, or nearly so" . . . that the legislation was designed to eliminate the danger of distortion and misrepresentation inherent in a report which merely selects portions, albeit accurately, from a lengthy oral recital. Quoting out of context is one of the most frequent and powerful modes of misquotation. We think it consistent with this legislative

> history, and with the generally restrictive terms of the statutory provisions, to require that summaries of an oral statement which evidence substantial selection of material, or which were prepared after the interview without the aid of complete notes, and hence rest on the memory of the agent, are not to be produced.

Id. at 350.  Accordingly, the Supreme Court affirmed the District Court's ruling that a memorandum regarding a witness interview that had been prepared by a government agent was not disclosable pursuant to the Jencks Act.

The D.C. Circuit has consistently held that the Jencks Act does not apply to an agent's notes of a witness interview.  In Donato, 99 F.3d 426, the defendant claimed that, pursuant to the Jencks Act, the government should have been required to produce notes and reports regarding an interview of a cooperating witness that were prepared by a government agent.  Id. at 433.  The Court of Appeals rejected this claim, holding that:

> the Supreme Court explained that the Jencks Act covered statements that could fairly be used by the defense to impeach a government witness.  In order that this goal be achieved, these statements had to be limited to those that could properly be called the witness' own words. [citation omitted] Notes from an interview with a witness that were not the whole interview but rather a "substantial selection" of the interview were not covered. [citation omitted] Here, the agent testified that he included in his account of his interview with [the witness] everything that he (the agent) considered pertinent.  The agent engaged in "substantial selection," recording not the entire interview, but only those portions he found pertinent.  Under Palermo, the agent's notes and 302 report from his pre-trial interview with [the witness] are not covered by the Jencks Act.

Id..  Similarly, the D.C. Circuit recently held in that, "[u]nder the definition in subparagraph (e), notes of a conversation are not generally Jencks Act material (unless they represent a full transcription) (citation omitted), but a statement that is handwritten and approved by the witness

is Jencks Act material." United States v. Oruche, 484 F.3d 590 (DC Cir. 2007). See also United States v. Thomas, 97 F.3d 1499, 1502 (DC Cir. 1996) ("The Jencks Act does not apply unless the witness has signed or otherwise adopted or approved the writing"; thus, only final, signed statements fall under the Jencks Act).[3]

    Moreover, the DEA-6 at issue pertains to an interview of a confidential source, again who will not testify in this case.  Thus, the Government has an interest in protecting the identity of this confidential source, especially because his or her identity has yet to be revealed in this matter.  Indeed, in passing the Jencks Act, "Congress was concerned, not with the Jencks decision itself, but with 'misinterpretations and misunderstandings' in application of Jencks in

---

[3] Other Circuit Courts have routinely reached the same conclusion that government summaries, such as the DEA-6 in this case, do not qualify as "statements" under the Jencks Act. See, e.g., see also United States v. Jordan, 316 F.3d 1215, 1255 (11th Cir.) (agent's interview notes not Jencks because "substantially verbatim' means using nearly the exact wording or phrasing the witness uttered"); Duncan v. Cain, 278 F.3d 537, 539 (5th Cir. 2002) (police notes of witness interview not Jencks); United States v. Marrero-Ortiz, 160 F.3d 768, 776 (1st Cir. 1998) ("A written summary of a witness interview is not a statement unless the evidence shows that the witness adopted the notes, a phenomenon that would occur, for example, if 'the interviewer read the statement back to the witness and . . . the witness approved the statement.'"); United States v. Ramos, 27 F.3d 65, 69-70 (3d Cir. 1994) (agent's notes of interview with cooperating co-conspirators not Jencks because not substantially verbatim); United States v. Farley, 2 F.3d 645, 654 (6th Cir.) (holding that agent summaries of witness interview not disclosable), cert. denied, 510 U.S. 1030 (1993); United States v. Phibbs, 999 F.2d 1053, 1089 (6th Cir. 1993) (pretrial interview notes not Jencks because not substantially verbatim); United States v. Williams, 998 F.2d 258, 269 (5th Cir. 1993) ("Although the Forms 302 were based on the FBI agents' interview with [the witness], they were not signed by [the witness], nor do they contain substantially verbatim statements by [the witness] relating to the subject matter on which [the witness] testified, as opposed to 'scattered jottings' made by the FBI agents. . . . The FBI Forms 302 were not discoverable statements under the Jencks Act."); United States v. Marshall, 985 F.2d 901, 907 (7th Cir.1993) ("An agent's summary of a witness' oral statement that is not signed or adopted by the witness is not subject to disclosure under the Jencks Act.");United States v. Simtob, 901 F.2d 799, 809 (9th Cir. 1990) ("A government agent's rough notes will not be Jencks Act statements when they 'are not complete, are truncated in nature, or have become an unsiftable mix of witness testimony, investigator's selections, interpretations, and interpolations.'").

district courts and courts of appeals. S.Rep.No.981, Supra, at 3-5, 7-12; H.R.Rep.No.700, Supra, at 2-3, 6. The concern was that misapplication of Jencks would permit defendants 'to rove at will through Government files.' S.Rep.No.569, 85th Cong., 1st Sess., 3 (1957). See Palermo v. United States, 360 U.S. 343, 350, 79 S.Ct. 1217, 1223, 3 L.Ed.2d 1287, 1294 (1959). The House committee expressed its goal as that of preventing defendants from 'rummag(ing) through confidential information containing matters of public interest, safety, welfare, and national security.' H.R.Rep.No.700, Supra, at 4." Goldberg v. United States, 425 U.S. 94, 104 (1976).

2.    The DEA-6 Report's Subject Matter is Not the Subject Matter of the Authoring Agent's Testimony.

The Jencks Act further provides that only pretrial statements which relate to the subject matter of the witness's testimony may be discoverable by the defendant. See 18 U.S.C. §3500(b); Fed. R. Crim. P. 26.2(a). Statements "relate" to the testimony if they "touch[] the events and activities as to which a Government witness has testified at the trial." Goldberg, 425 U.S. at 104 (quoting S.Rep.No.981, 85th Cong., 1st Sess., 3 (1957), U.S.Code Cong. & Admin.News 1957, pp. 1861, 1862. See H.R.Rep.No.700, 85th Cong., 1st Sess., 4 (1957));see also United States v. Schneiderhan, 404 F.3d 73, 80 (1st Cir. 2005) (government not required under Jencks Act to produce witness's general letter referring to government's investigative techniques because statements did not relate specifically to witness's testimony); United States v. Ramirez, 145 F.3d 345, 356 (5th Cir.1998) (government not required under Jencks Act to produce agent's interview material because it did not relate to subject matter of witness's testimony); United States v. Susskind, 4 F.3d 1400, 1404-05 (6th Cir. 1993) (en banc) (government not required under Jencks Act to provide witness's statements related to subject matter at issue in case but not related to witness's direct testimony); United States v. Pittman, 82 F.3d 152, 156 (7th

Cir. 1996) (government not required under Jencks Act to disclose portion of IRS agent's report not related to agent's testimony).

      Here, as discussed above, the DEA-6 generated by Special Agent Ventura involves a summary of an interview with a confidential informant.  Special Agent Ventura is expected to testify generally regarding about drug routes and operations in Panama and various other countries in Central and South America, and regarding Panama as a trans-shipment country for drugs destined for the United States.  Ventura will not testify as a fact witness in this case.  Consequently, no part of his testimony will involve any witness interviews in which he participated.  Inasmuch as his report does not relate to the subject matter of his testimony, his report should in no way be discovered to the defense.

      The government has made every effort to ensure that all material covered by the Jencks Act has been provided to defense counsel, and will continue to do so.  The government is not seeking to circumscribe the defense efforts to discover statements of the witnesses as to the existence of all Jencks material.  Rather the government only seeks to limit the discovery, disclosure and use of materials which do not fall within the Jencks Act.

WHEREFORE, for all the foregoing reasons, the government respectfully requests that the Court grant the government's Motion in Limine to preclude the disclosure of the DEA-6 produced by Special Agent Ventura as Jencks Act material.

Respectfully submitted,

Donnell W. Turner
Paul Laymon
Mary Mogavero
Trial Attorneys

Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice
1400 New York Ave., NW, 8th Floor
Washington, D.C.  20005
(202) 307-5977

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this Motion in Limine was delivered to all parties via the ECF filing system on this 12th day of June, 2008.

Mary E. Mogavero